UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CARL FREDERICK COSLOW | ) | CASE NO. 16-32291 |
| | ) | |
| DEBTOR | ) | CHAPTER 7 |
| | ) | |

| | | |
|---|---|---|
| CARL FREDERICK COSLOW | ) | |
| | ) | |
| PLAINTIFF | ) | A.P. NO. 16-3096 |
| VS. | ) | |
| | ) | |
| WILLIAM STEPHEN REISZ, | ) | |
| In His Capacity as Chapter 7 Trustee | ) | |
| 401 W. Main St., Ste. 1400 | ) | |
| Louisville, KY 40202 | ) | |
| | ) | |
| DEFENDANT | ) | |

**MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT**

This adversary proceeding was commenced to determine the bankruptcy estate's interest in real property. The matters under advisement are the cross motions for summary judgment filed by Plaintiff/ Debtor Carl Frederick Coslow ("Plaintiff"), and Defendant William Stephen Reisz, the Chapter 7 Trustee ("Trustee"). In addition to the cross motions for summary judgment and supporting exhibits, the parties have filed Stipulated Facts. Upon consideration of the summary judgment motions, the supporting documentation, and the Stipulated Facts, the Court holds that summary judgment should be granted in favor of the Plaintiff.

**I.      STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Venue of this adversary proceeding in this Court is

proper under 28 U.S.C. §1409(a), as this proceeding arises in and relates to the Plaintiff's Chapter 7 case pending in this District. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b) and there is no objection to venue or jurisdiction over the parties.

## II.    SUMMARY JUDGMENT STANDARD

As stated above, the parties filed Stipulated Facts, demonstrating that there is no genuine dispute as to any material facts. The Court can render summary judgment only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is appropriate when the record taken as a whole, and viewed in the light most favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968))*. The party seeking summary judgment bears the burden initially of showing that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on the pleadings, depositions, answers to interrogatories, and admissions on file. *Id.* When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, summary judgment should be granted. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (*quoting Celotex*, 477 U.S. at 322).

Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Bankr. P.  R. Civ. P. 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its

claim, once a properly supported motion for summary judgment has been made.

**III.   FACTS**

The parties stipulated[1] to the following facts for the purpose of summary judgment:

1. The Plaintiff and his non-debtor wife, Merilyn S. Coslow, have at all relevant times owned as joint tenants with rights of survivorship the real property located at 7908 Sutherland Farm Road, Prospect, Kentucky 40059 (the "Residence").

2. The Residence is encumbered by a traditional first mortgage in favor of U.S. Bank National Association, as trustee for WAMU Mortgage Pass-Through Certificates Series 2003-S8 (the "First Mortgage").

3. For many years, the Plaintiff owned and managed Republic Industries International, Inc. ("Republic"), a Kentucky Corporation headquartered in Louisville which served businesses engaged in coal mining.

4. For several years prior to June 2014, Stock Yards Bank and Trust Company ("Stock Yards") financed Republic's operations pursuant to multiple loan agreements by and among Republic, the Plaintiff, and Stock Yards, which had been variously novated and modified from time to time (collectively and as amended from time to time, the "Loans").

5. In June 2014, Republic faced mounting losses and a default to Stock Yards under the Loans, which had been modified previously when Republic first became unable to service them by their terms. In coordination with Stock Yards, the Plaintiff resolved to liquidate Republic. At that time, Republic owed Stock Yards approximately $4,540,384.89, which was personally guaranteed by the Plaintiff but not by Mrs. Coslow.

---

[1] Dkt. No. 10.

6. During the ensuing year and a half, the Plaintiff made his best effort to maximize the value of Republic's assets and to mitigate Stock Yards's losses and the Plaintiff's liability under the personal guarantee of the Loans. Principally, this included the November 2014 sale of Republic's Highwall Mining Division, which encompassed significant equipment and intellectual property, to JBLCO, LLC ("JBL"). The November 2014 sale to JBL is referred to hereafter as the "Asset Purchase Agreement."

7. By December 2015, the Plaintiff had caused Republic to liquidate all its assets with realizable value, having assigned the receivables due from JBL under the Asset Purchase Agreement to Stock Yards.

8. On or about December 24, 2015, in recognition of the Plaintiff's cooperation in the orderly unwinding of Republic, Stock Yards and the Plaintiff entered into a final agreement whereby:

    a. Stock Yards reduced the Plaintiff's liability for his personal guarantees under the Loans from an amount in excess of one million dollars to the amount then owed by JBL under the Asset Purchase Agreement (viz. $425,000.00); in exchange for

    b. (i) the Plaintiff's grant to Stock Yards of a second mortgage against the Residence in the maximum amount of $275,000.00 (the "Second Mortgage"), securing the JBL payments under the Asset Purchase Agreement; (ii) the Plaintiff's continued efforts to cause Republic to perform its covenants under the Asset Purchase Agreement; and (iii) the Plaintiff's ongoing efforts to facilitate collection on behalf of Stock Yards from JBL.

9. The Second Mortgage provides that Mrs. Coslow

> joins in this [Second] Mortgage to consent to the grant of the [Second] Mortgage and to subordinate her interest in the [Residence] to the lien of this [Second] Mortgage (but not for any amount exceeding 50% of the value of the [Residence]), for the purposes and under the conditions hereof but without assuming any personal liability under the Mortgage Indebtedness.

10. Pursuant to the terms of the Second Mortgage, if the Residence were to be sold, under any sale scenario, whether voluntary or pursuant to judicial order, the proceeds of such a sale, net of costs of sale and any outstanding property taxes, would be disbursed as follows:

    a. first, to the holder of the First Mortgage;

    b. second, to Stock Yards, in an amount not greater than the lesser of

        i. the balance of the Second Mortgage, or

        ii. one half of the gross sale proceeds, in satisfaction of Stock Yards's interest in the Second Mortgage;

    c. third, to Mrs. Coslow, in an amount equal the amount paid to Stock Yards under paragraph 10(b) above; and

    d. fourth, to the Plaintiff, or his successor in title, and Mrs. Coslow in equal shares.

11. On July 26, 2016 (the "Petition Date"), the Plaintiff filed in this Court his Voluntary Petition for Relief under chapter 7 of the Bankruptcy Code, initiating the underlying bankruptcy case.

12. On the Petition Date, the First Mortgage had a balance of $62,541.32.

13. On the Petition Date, the Second Mortgage had a balance of $275,000.00.

14. The Plaintiff asserts that the Residence is worth $550,000. The Trustee believes it is worth more.

15. JBL has continued to deliver payments required by the Asset Purchase Agreement, and is on track to satisfy the obligation and, accordingly, the Second Mortgage, in May 2017 or

soon thereafter.

16. As of April 6, 2017, the Second Mortgage has a balance of $50,000. All payments which have reduced the Second Mortgage balance from $275,000 to the present balance of $50,000 have been made directly by JBL to Stock Yards under the Asset Purchase Agreement. Plaintiff has made none of the payments which have reduced the Second Mortgage balance.

## IV.   LEGAL DISCUSSION

In the Plaintiff's summary judgment motion, he claims he is entitled to a declaratory judgment stating that the Trustee's interest in the Residence is of no value. The Plaintiff asserts that it is undisputed that, as of the Petition Date, there was no equity in the Residence for the bankruptcy estate. Therefore, according to the Plaintiff, the Court should order the Trustee to abandon the Residence.

Conversely, the Trustee contends that value is not determined as of the petition date for abandonment purposes, and that any payment made on an encumbrance, no matter the source of the payment or the timing of the payment, should benefit the bankruptcy estate. The Trustee contends it would be unjust to make a ruling that value should be determined as of the petition date.

Section 554(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). In order to compel abandonment, the bankruptcy court must find that either (1) the property is burdensome to the estate or (2) of inconsequential value and inconsequential benefit to the estate. *See* 11 U.S.C. § 554(b); *Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.)*, 816 F.2d 238, 245 (6th Cir. 1987). "An order compelling abandonment is the exception, not the rule. Abandonment should

only be compelled in order to help the creditors by assuring some benefit in the administration of each asset . . .. Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered." Id. at 246; *In re Viet Vu*, 245 B.R. 644, 647 (9th Cir. BAP 2000).

The issue presented to this Court is somewhat straightforward. If the Residence is valued as of the petition date, there is no equity in the property, and it would be of inconsequential value to the bankruptcy estate, and should be abandoned. Alternatively, if the Residence is valued at a time after the petition date, the Residence would have significant equity, and would be of significant value to the estate, and should not be abandoned.

The filing of a chapter 7 petition creates a bankruptcy estate. "[F]ederal bankruptcy law"—particularly, § 541 of the Code—"dictates to what extent [an] interest is property of the estate." *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013) (*quoting Bavely v. United States (In re Terwilliger's Catering Plus, Inc.)*, 911 F.2d 1168, 1172 (6th Cir. 1990). Under the Bankruptcy Code, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*. . . ." 11 U.S.C. § 541(a)(1) (emphasis added); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203, (1983) ("estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case"); *In re Bailey*, 380 B.R. 486 (6th Cir. B.A.P. 2008) (same); 5-541 Collier on Bankruptcy ¶ 541.02 (16th 2017) ("Under section 541(a), and with a few enumerated exceptions, the bankruptcy estate consists of all of the debtor's legal and equitable property interests that existed as of the commencement of the case, that is, as of the time that the bankruptcy petition, voluntary or involuntary, is filed.").

This characterization of the law as of the date of filing has long been referred to as the

"snapshot rule." *White v. Stump* was the first Supreme Court case to explain the "snapshot rule" without actually coining the name. 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924). While *White* applied the "snapshot rule" in the context of exemptions, this applies equally with respect to abandonments and 11 U.S.C. § 554. The "snapshot rule" clarifies that, in a Chapter 7 case, property of the estate consists solely of property in existence as of the date of the filing of the Chapter 7 petition. 11 U.S.C. § 541(a)(1).

In this case, the equity created post petition by the payment on the Second Mortgage by JBL is property acquired post petition. The post petition equity is nothing more than a different form of compensation being paid to the Plaintiff for his post petition services in winding up Republic.

Section 541(a)(1) places a temporal limit on the interests that become part of the debtor's estate. The estate includes only those legal or equitable interests the debtor has "as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996). Property interests belonging to a chapter 7 debtor when the petition is filed are part of the estate to be administered by the trustee. Subject to exceptions specified in section 541, however, property a debtor acquires post petition belongs to the debtor. *See Sender v. Buchanan (In re Hedged–Invs. Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996).

This is as true for equity in property as it is for cars or wages. Equity that has accrued as of the commencement of the case is estate property; that a trustee may pursue. Equity that accrues as compensation for post petition services, on the other hand, is the debtor's to pursue for his own benefit. *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043–44 (11th Cir. 2004) (referring to post petition cause of action). To allow the Trustee to reap the equity created for the post petition services performed by the Plaintiff would greatly expand the scope of bankruptcy estate property

and go beyond the limits set by 11 U.S.C. § 541.

The Trustee cites no authority for his position that the post petition accrued equity for post petition services should inure to the bankruptcy estate. Instead, the Trustee seems to rely upon a policy argument that ordering the abandonment of the Residence could set a precedent for "pre-petition planning shenanigans" that would allow a debtor to falsely encumber property to prevent a trustee from recovering any equity from property. The Court believes the Trustee's concerns are unfounded. The circumstances in this case are somewhat unusual. Nevertheless, there are numerous safeguards within the Bankruptcy Code to prevent the "shenanigans" that the Trustee is concerned about. There are mechanisms to avoid and recover fraudulent and preferential transfers under the Code. 11 U.S.C. §§ 547 and 548. Denial of discharge under 11 U.S.C. § 727 is also possible for debtors who hide assets, or otherwise abuse the bankruptcy system. Finally, there is also a mechanism for dismissal of a bankruptcy case in appropriate circumstances. 11 U.S.C. § 707. In short, the Trustee's policy arguments do not override the clear language of §§ 541 and 554.

## V.     CONCLUSION

In this case, as of the date of the bankruptcy filing, the bankruptcy estates had no equity in the Residence. As such, this made a prima facie case in support of the Plaintiff's request for abandonment. Any equity in the Residence, was created post petition and resulted directly from the Plaintiff's post petition services. The Trustee has offered nothing to rebut the Plaintiff's prima facie case. *In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987) (after debtors' prima facie case of no equity in residence, burden shifted to trustee or creditor to show equity or some other benefit to the bankruptcy estate). Consequently, the Court will grant the Plaintiff's Motion for Summary judgment on both Counts I and Counts II of the Complaint. The Court will also deny the Trustee's Motion

for Summary Judgment. The Court shall enter a Judgment this same date in accordance with the holding of this Memorandum.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: July 28, 2017

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CARL FREDERICK COSLOW | ) | CASE NO. 16-32291 |
| | ) | |
| DEBTOR | ) | CHAPTER 7 |
| | ) | |

| | | |
|---|---|---|
| CARL FREDERICK COSLOW | ) | |
| | ) | |
| PLAINTIFF | ) | A.P. NO. 16-3096 |
| VS. | ) | |
| | ) | |
| WILLIAM STEPHEN REISZ, | ) | |
| In His Capacity as Chapter 7 Trustee | ) | |
| 401 W. Main St., Ste. 1400 | ) | |
| Louisville, KY 40202 | ) | |
| DEFENDANT | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

**IT IS ORDERED** that Plaintiff-Debtor's Motion for Summary Judgment (DN 12) be, and is, **GRANTED**.

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee is ordered to abandon the bankruptcy estate's interest in the Residence, as that term is defined in the Joint Stipulation (DN 10).

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee's Motion for Summary Judgment (DN 14) be, and is, **DENIED**.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: July 28, 2017